Wydział VI do Spraw
Przestępczości Gospodarczej
ul. Reymonta 24, 45-954 Opole
Sygnatura akt VI Ds.10/05

U U 1 U ƌ 7

Opole, dnia 23 kwietnia 2012 roku.

### Postanowienie
#### o poszukiwaniu podejrzanego listem gończym

M███████ S███████ – Prokurator Prokuratury Rejonowej delegowana do Prokuratury Okręgowej w Opolu, po zapoznaniu się aktami śledztwa o sygnaturze VI Ds.10/05 przeciwko Adamowi Antonowiczowi podejrzanemu o przestępstwa z art. 3 § 1 Ustawy z dnia 12 października 1994 roku o ochronie obrotu gospodarczego i zmianie niektórych przepisów prawa karnego w zw. z art. 265 § 1 dkk przy zastosowaniu art.10 § 2 dkk i art. 58 § 1 dkk w zw. z art. 4 § 1 dkk, art. 272 kk w zw. z art.233 § 6 w zw. z § 1 kk i art. 270 § 1kk przy zastosowaniu art.11 § 2kk w zw. z art.12 kk, art. 13 § 1kk w zw. z art.272 kk w zw. z art.273 kk i art.233 § 6 w zw. z § 1 kk i art.270 § 1 kk przy zastosowaniu art.11§2kk.

**na podstawie art. 279 § 1 kpk**

#### postanowiła :

**zarządzić poszukiwanie listem gończym ukrywającego się przed organami ścigania podejrzanego Adama Antonowicza, syna Zbigniewa i Haliny z domu Bojanowskiej, ur. 24 grudnia 1978 roku w Łodzi, wobec którego Sąd Rejonowy w Opolu Wydział II Karny postanowieniem z dnia 18 kwietnia 2012 roku, sygnatura akt II Kp 125/12 zastosował środek zapobiegawczy w postaci tymczasowego aresztowania na okres 14 dni od dnia zatrzymania.**

#### Uzasadnienie

Prokuratura Okręgowa w Opolu nadzoruje zawieszone śledztwo o sygnaturze akt VI Ds.10/05 przeciwko Adamowi Antonowiczowi podejrzanemu o przestępstwa z art. 3 § 1 Ustawy z dnia 12 października 1994 roku o ochronie obrotu gospodarczego i zmianie niektórych przepisów prawa karnego w zw. z art. 265 § 1 dkk przy zastosowaniu art.10 § 2 dkk i art. 58 § 1 dkk w zw. z art. 4 § 1 dkk, art. 272 kk w zw. z art.233 § 6 w zw. z § 1 kk i art. 270 § 1kk przy zastosowaniu art.11 § 2kk w zw. z art.12 kk, art. 13 § 1kk w zw. z art.272 kk w zw. z art.273 kk i art.233 § 6 w zw. z § 1 kk i art.270 § 1 kk przy zastosowaniu art.11§2kk.

W jego toku postanowieniem z dnia 18 kwietnia 2012 roku, sygnatura II Kp 125/12 Sąd Rejonowy w Opolu zastosował wobec podejrzanego środek zapobiegawczy w postaci tymczasowego aresztowania na okres na okres 14 (czternastu) dni od daty zatrzymania.

Z poczynionych na potrzeby rzeczonego śledztwa ustaleń faktycznych jednoznacznie wynika, iż Adam Antonowicz uporczywie, od ponad 10 lat ukrywa się

11 -07- 2012

Opole, dnia ........................ Skowronek

001658

przed organami ścigania celowo utrudniając prowadzone przeciwko sobie postępowanie karne. Świadczy o tym w szczególności fakt, iż mając zastosowany postanowieniem z dnia 16 lipca 2003 roku, sygn. akt  V Ds. 24/02 zakaz opuszczania kraju, z jednoczesnym  zatrzymaniem paszportu, w obliczu utraty ważności wydanego mu przez Wojewodę Opolskiego paszportu o numerze BM███629, w dniu 16 października 2009 roku w Konsulacie Generalnym RP w Sao Paulo, wskutek podstępnego wprowadzenia w błąd  wicekonsula w/w placówki dyplomatycznej T███ Ł███ odnośnie swojej prawdziwej tożsamości, wyłudził paszport tymczasowy o numerze PA███012 na nazwisko brata J███ A███ A███████ ze swoim wizerunkiem. Nadto z poczynionych ustaleń wynika, iż w dniu 20 października 2009 roku w/w podejrzany usiłował wyłudzić poświadczenie nieprawdy w postaci paszportu  10 – letniego na nazwisko brata Jerzego Adama Antonowicza w Wydziale Konsularnym Ambasady RP w Londynie.

   Prowadzone do chwili obecnej czynności poszukiwawcze za w/w, jak również  próby ustalenia aktualnego miejsca pobytu zarówno w kraju, jak i poza jego granicami okazały się bezskuteczne.

   Wobec powyższych okoliczności postanowienie o poszukiwaniu podejrzanego Adama Antonowicza listem gończym jest w pełni uzasadnione.



PROKURATOR
Prokuratury Rejonowej
Delegowany do Prokuratury Okręgowej

Małgorzata Sadowska

**Zarządzenie :**

1.Sporządzić list gończy i przesłać go wraz z niniejszym postanowieniem do Komendy Powiatowej Policji w Brzegu celu niezwłocznego rozpowszechnienia go do innych jednostek Policji.

2.Odpis postanowienia wraz z listem gończym przesłać do Komendy Głównej Straży Granicznej w Warszawie.



2

001660

**PROKURATURA OKRĘGOWA**
Wydział VI do Spraw
Przestępczości Gospodarczej
ul. Reymonta 24, 45-954 Opole

Opole, dnia 23.04.2012r.

Sygn. akt **V Ds. 10/05**

**Komenda Powiatowa Policji**

**w    Brzegu**

## LIST GOŃCZY

**M███████ S██████** – prokurator Prokuratury Rejonowej w Opolu delegowany do Prokuratury Okręgowej w Opolu

stosownie do swego postanowienia z dnia **23 kwietnia 2012roku**

wydanego na podstawie art. 279 § 1 kpk w sprawie **V Ds. 10/05**

I. Zarządza poszukiwanie **listem gończym** niżej wymienionego podejrzanego:

1. Nazwisko i imiona **Antonowicz Adam**

2. Pseudonim..............................................................................................................

3. Imię ojca **Z█████**

   Imię i nazwisko panieńskie matki: **B████ zd. Bojanowska**

4. Data i miejsce urodzenia: ███████████████

   Nr ewidencyjny PESEL

   ███████████████ **8 9 9**

5. Ostatnie miejsce zameldowania

   ████ **Brzeg, ul**████████████

6. Ostatnie miejsce zamieszkania j.w.

7. Ostatnie miejsce pracy.............................................................................................

8. Zawód......................................................................................................................

9. Obywatelstwo: **Polskie**

10. Płeć: **mężczyzna**

PG Od. 9 - List gończy
druk: Drukarnia Nr 1, 02-521 Warszawa, ul. Rakowiecka 37, tel. (0-22) 540-81-77, fax 849-94-97

001661

11. Rysopis:   wzrost - .........................................   włosy - ....................................................... ..........
               czoło - ..........................................   twarz - ....................................................... .......
               kolor oczu - ....................................   uszy – .............................................. ..........
               nos - ..................................................   usta - ...................................................
               znaki szczególne - ...................................................................................................... ..........
               inne cechy rysopisowe - ...................................................................................... ..........

Rysopis ze zbiorów prowadzonych na podstawie ustawy przez organy władzy publicznej. *)

12. Informacja o treści postawionego zarzutu:

1. w okresie od dnia 27 kwietnia 1998 roku do dnia 17 sierpnia 1998 roku w Brzegu, wspólnie i w porozumieniu z innymi osobami, w celu uzyskania z Banku Zachodniego S.A. we Wrocławiu Oddział w Namysłowie dla siebie oraz innych osób kredytów bankowych przeznaczonych na zakup w systemie sprzedaży ratalnej w „FHU Biuro Podróży PTTK" z/s Brzegu, którego był pełnomocnikiem, imprez turystycznych za granicą oraz na terenie kraju, przedkładał za pośrednictwem Krzysztofa Niedzielskiego - właściciela firmy KLN Pośrednictwo Kredytowe z/s w Kluczborku w w/w banku nierzetelne, oraz podrobione dokumenty mające istotne znaczenie dla uzyskania kredytów działając na szkodę Banku Zachodniego S.A Oddział w Namysłowie i tak:

o przestępstwo z art. 3 § 1 Ustawy z dnia 12 października 1994 roku o ochronie obrotu gospodarczego i zmianie niektórych przepisów prawa karnego w zw. z art. 265 § 1 dkk przy zastosowaniu art.10 § 2 dkk i art. 58 § 1 dkk w zw. z art. 4 § 1 dkk. **i inne**

13. Data i sygnatura postanowienia o tymczasowym aresztowaniu: **Sąd Rejonowy w Opolu postanowienie z dnia 18 kwietnia 2012r. sygn. akt II Kp 125/12**

**II.** Rozpowszechnienie listu gończego nastąpi poprzez rozesłanie do jednostek Policji, oraz:
- rozplakatowanie *)
- publikację danych z listu gończego w sieci Internet *)
- publikację danych z listu gończego w środkach masowego przekazu (radio, telewizja, prasa). *)

**III.** Fotografia poszukiwanego:
- w załączeniu *)
- fotografia ze zbiorów prowadzonych na podstawie ustawy przez organy władzy publicznej.*)

**Wzywa się każdego, kto zna miejsce pobytu poszukiwanego, do zawiadomienia o tym najbliższej jednostki Policji lub prokuratora (art. 280 § 1 pkt 4 kpk).**

**Ostrzega się, że za ukrywanie poszukiwanego lub dopomaganie mu w ucieczce grozi kara pozbawienia wolności do lat 5 (art. 239 § 1 kk).**

**Za ujęcie lub przyczynienie się do ujęcia poszukiwanego wyznaczono nagrodę w wysokości ........................................................, ............................... złotych*)**

Udziela się zapewnienia o utrzymaniu tajemnicy co do osoby informującej (art. 280 § 2 kpk).

**Załączniki:**

1. Odpis postanowienia o tymczasowym aresztowaniu.
2. Nakaz przyjęcia do najbliższego aresztu śledczego

- niepotrzebne skreślić.



ADAM KAZIMIERZ ANTONOWICZ
Syn Z████████ i H████ z domu B████
Urodzony ████████████ roku w ████████

Podejrzany jest poszukiwany listem gończym w związku z popełnieniem przestępstw
o czyny z artykułu 286 paragraf 1 kodeksu karnego, w związku z artykułem 270 paragraf 1
kodeksu karnego i artykułem 297 paragraf 1 kodeksu karnego przy zastosowaniu artykułu
11 paragraf 2 kodeksu karnego Prokuratura Okręgowa do śledztwa sygnatura akt V
Ds  10/05

Zdjęcia wykonano w 1997 roku

Opole, dnia

11 -07- 2013



**ADAM KAZIMIERZ ANTONOWICZ**
Syn Z██████ i H███ z domu B██████
Urodzony ██████████ roku w ███

Podejrzany jest poszukiwany listem gończym w związku z popełnieniem przestępstw
o czyny z artykułu 286 paragraf 1 kodeksu karnego, w związku z artykułem 270 paragraf 1
kodeksu karnego i artykułem 297 paragraf 1 kodeksu karnego przy zastosowaniu artykułu
11 paragraf 2 kodeksu karnego i artykułu 12 kodeksu karnego, do śledztwa sygnatura akt V
Ds  16/05

Zdjęcia wykonano w 1999 roku

11 -07- 2013

Opole, dnia



**ADAM KAZIMIERZ ANTONOWICZ**

syn z▮▮▮▮▮ i H▮▮▮ z domu B▮▮▮▮

**Urodzony** ▮▮▮▮▮▮ roku w ▮▮▮▮





## WYPIS Z USTAWY Z DNIA 6 CZERWCA 1997 R. KODEKS KARNY

**Art. 11. § 1.** Ten sam czyn może stanowić tylko jedno przestępstwo.

**§ 2.** Jeżeli czyn wyczerpuje znamiona określone w dwóch albo więcej przepisach ustawy karnej, sąd skazuje za jedno przestępstwo na podstawie wszystkich zbiegających się przepisów.

**§ 3.** W wypadku określonym w § 2 sąd wymierza karę na podstawie przepisu przewidującego karę najsurowszą, co nie stoi na przeszkodzie orzeczeniu innych środków przewidzianych w ustawie na podstawie wszystkich zbiegających się przepisów.

**Art. 12.** Dwa lub więcej zachowań, podjętych w krótkich odstępach czasu w wykonaniu z góry powziętego zamiaru, uważa się za jeden czyn zabroniony; jeżeli przedmiotem zamachu jest dobro osobiste, warunkiem uznania wielości zachowań za jeden czyn zabroniony jest tożsamość pokrzywdzonego.

**Art. 13. § 1.** Odpowiada za usiłowanie, kto w zamiarze popełnienia czynu zabronionego swoim zachowaniem bezpośrednio zmierza do jego dokonania, które jednak nie następuje.

**§ 2.** Usiłowanie zachodzi także wtedy, gdy sprawca nie uświadamia sobie, że dokonanie jest niemożliwe ze względu na brak przedmiotu nadającego się do popełnienia na nim czynu zabronionego lub ze względu na użycie środka nie nadającego się do popełnienia czynu zabronionego.

**Art. 101. § 1.** Karalność przestępstwa ustaje, jeżeli od czasu jego popełnienia upłynęło lat:

1) 30 - gdy czyn stanowi zbrodnię zabójstwa,

2) 20 - gdy czyn stanowi inną zbrodnię,

2a) 15 - gdy czyn stanowi występek zagrożony karą pozbawienia wolności przekraczającą 5 lat,

3) 10 - gdy czyn stanowi występek zagrożony karą pozbawienia wolności przekraczającą 3 lata,

4) 5 - gdy chodzi o pozostałe występki.

**Art. 102.**   Jeżeli w okresie przewidzianym w art. 101 wszczęto postępowanie przeciwko osobie, karalność popełnionego przez nią przestępstwa określonego w § 1 pkt 1-3 ustaje z upływem 10 lat, a w pozostałych wypadkach - z upływem 5 lat od zakończenia tego okresu.

**Art. 233.** § 1. Kto, składając zeznanie mające służyć za dowód w postępowaniu sądowym lub w innym postępowaniu prowadzonym na podstawie ustawy, zeznaje nieprawdę lub zataja prawdę,

podlega karze pozbawienia wolności do lat 3.

§ 2. Warunkiem odpowiedzialności jest, aby przyjmujący zeznanie, działając w zakresie swoich uprawnień, uprzedził zeznającego o odpowiedzialności karnej za fałszywe zeznanie lub odebrał od niego przyrzeczenie.

§ 3. Nie podlega karze, kto, nie wiedząc o prawie odmowy zeznania lub odpowiedzi na pytania, składa fałszywe zeznanie z obawy przed odpowiedzialnością karną grożącą jemu samemu lub jego najbliższym.

§ 4. Kto, jako biegły, rzeczoznawca lub tłumacz, przedstawia fałszywą opinię lub tłumaczenie mające służyć za dowód w postępowaniu określonym w § 1,

podlega karze pozbawienia wolności do lat 3.

§ 5. Sąd może zastosować nadzwyczajne złagodzenie kary, a nawet odstąpić od jej wymierzenia, jeżeli:

1) fałszywe zeznanie, opinia lub tłumaczenie dotyczy okoliczności nie mogących mieć wpływu na rozstrzygnięcie sprawy,

2) sprawca dobrowolnie sprostuje fałszywe zeznanie, opinię lub tłumaczenie, zanim nastąpi, chociażby nieprawomocne, rozstrzygnięcie sprawy.

§ 6. Przepisy § 1-3 oraz 5 stosuje się odpowiednio do osoby, która składa fałszywe oświadczenie, jeżeli przepis ustawy przewiduje możliwość odebrania oświadczenia pod rygorem odpowiedzialności karnej.

**Art. 270.** § 1. Kto, w celu użycia za autentyczny, podrabia lub przerabia dokument lub takiego dokumentu jako autentycznego używa,

podlega grzywnie, karze ograniczenia wolności albo pozbawienia wolności od 3 miesięcy do lat 5.

§ 2. Tej samej karze podlega, kto wypełnia blankiet, opatrzony cudzym podpisem, niezgodnie z wolą podpisanego i na jego szkodę albo takiego dokumentu używa.

§ 2a. W wypadku mniejszej wagi, sprawca

podlega grzywnie, karze ograniczenia wolności albo pozbawienia wolności do lat 2.

§ 3. Kto czyni przygotowania do przestępstwa określonego w § 1,

podlega grzywnie, karze ograniczenia wolności albo pozbawienia wolności do lat 2.

**Art. 272.** Kto wyłudza poświadczenie nieprawdy przez podstępne wprowadzenie w błąd funkcjonariusza publicznego lub innej osoby upoważnionej do wystawienia dokumentu,

podlega karze pozbawienia wolności do lat 3

**Art. 273.** Kto używa dokumentu określonego w art. 271 lub 272,

podlega grzywnie, karze ograniczenia wolności albo pozbawienia wolności do lat 2.

## WYPIS Z USTAWY Z DNIA 19 KWIETNIA 1969 R. KODEKS KARNY

**Art. 4.** § 1. Przestępstwo uważa się za popełnione w czasie, w którym sprawca działał lub zaniechał działania, do którego był obowiązany.

§ 2. Przestępstwo uważa się za popełnione w miejscu, gdzie sprawca działał lub zaniechał działania, do którego był obowiązany, albo gdzie skutek przestępny nastąpił lub miał nastąpić

**Art. 10.** § 1. Jeden czyn może stanowić tylko jedno przestępstwo.

§ 2. Jeżeli czyn wyczerpuje znamiona określone w dwóch albo więcej przepisach ustawy karnej, sąd skazuje za jedno przestępstwo na podstawie wszystkich zbiegających się przepisów.

§ 3. W wypadku określonym w § 2 sąd wymierza karę na podstawie przepisu przewidującego karę najsurowszą, co nie stoi na przeszkodzie orzeczeniu kar dodatkowych i środków zabezpieczających na podstawie innych zbiegających się przepisów.

**Art. 58.** W razie skazania za przestępstwo ciągłe, sąd może orzec karę w granicach do najwyższego ustawowego zagrożenia zwiększonego o połowę, nie przekraczając jednak granicy danego rodzaju kary.

**Art. 265.** § 1. Kto w celu użycia za autentyczny podrabia lub przerabia dokument albo takiego dokumentu jako autentycznego używa, podlega karze pozbawienia wolności od 6 miesięcy do lat 5.

§ 2. W wypadku mniejszej wagi sprawca podlega karze pozbawienia wolności do roku, ograniczenia wolności albo grzywny.

§ 3. Kto czyni przygotowania do przestępstwa określonego w § 1 w ten sposób, że podrabia, przerabia lub nabywa druk urzędowy, pieczęć, stempel lub inne narzędzie, podlega karze pozbawienia wolności do lat 2, ograniczenia wolności albo grzywny.

## WYCIĄG Z USTAWY Z DNIA 12 PAŹDZIERNIKA 1994 R O OCHRONIE OBROTU GOSPODARCZEGO I ZMIANIE NIEKTÓRYCH PRZEPISÓW PRAWA KARNEGO

**Art. 3.** § 1. Kto w celu uzyskania kredytu, gwarancji kredytowej, dotacji, subwencji lub zamówienia publicznego przedkłada fałszywe lub stwierdzające nieprawdę dokumenty albo nierzetelne oświadczenia dotyczące okoliczności mających istotne znaczenie dla uzyskania takiego kredytu, gwarancji kredytowej, dotacji, subwencji lub zamówienia publicznego,

podlega karze pozbawienia wolności do lat 5.

§ 2. Tej samej karze podlega, kto wbrew ciążącemu na nim obowiązkowi nie powiadamia właściwego organu lub instytucji o powstaniu okoliczności mogących mieć wpływ na wstrzymanie albo ograniczenie wysokości udzielonego kredytu, gwarancji kredytowej, dotacji, subwencji lub zamówienia publicznego.

§ 3. Nie podlega karze, kto przed wszczęciem postępowania karnego dobrowolnie zapobiegł wykorzystaniu kredytu, gwarancji kredytowej, dotacji, subwencji lub zamówienia publicznego, uzyskanych w sposób określony w § 1 lub 2.

ZA ZGODNOŚĆ



**WYCIĄG Z USTAWY**

z dnia 6 czerwca 1997 roku

**Kodeks karny**

(Dziennik Ustaw z dnia 2 sierpnia 1997 roku)

**Artykuł 4. [Zmiana ustawy]**

§ 1. Jeżeli w czasie orzekania obowiązuje ustawa inna niż w czasie popełnienia przestępstwa, stosuje się ustawę nową, jednakże należy stosować ustawę obowiązującą poprzednio, jeżeli jest względniejsza dla sprawcy.

§ 2. Jeżeli według nowej ustawy czyn objęty wyrokiem zagrożony jest karą, której górna granica jest niższa od kary orzeczonej, wymierzoną karę obniża się do górnej granicy ustawowego zagrożenia przewidzianego za taki czyn w nowej ustawie.

§ 3. Jeżeli według nowej ustawy czyn objęty wyrokiem nie jest już zagrożony karą pozbawienia wolności, wymierzoną karę pozbawienia wolności podlegającą wykonaniu zamienia się na grzywnę albo karę ograniczenia wolności, przyjmując że jeden miesiąc pozbawienia wolności równa się 60 stawkom dziennym grzywny albo 2 miesiącom ograniczenia wolności.

§ 4. Jeżeli według nowej ustawy czyn objęty wyrokiem nie jest już zabroniony pod groźbą kary, skazanie ulega zatarciu z mocy prawa.

ZA ZGODNOŚĆ





001675

Opole, 11 czerwca 2012 r.

**WOJEWODA OPOLSKI**

SO.II.6122.408.2012.BA

PROKURATURA OKRĘGOWA
w OPOLU

14. 06. 2012

godz. ........ zał. ...........
Adriana Kempna

Henryk Mrozek

## POŚWIADCZENIE POSIADANIA OBYWATELSTWA POLSKIEGO

Działając na podstawie art. 1 oraz art. 17 ust. 4 ustawy z dnia 15 lutego 1962 r. o obywatelstwie polskim (D.U. z 2000 r., nr 28, poz. 353 z późn. zm.),



stwierdzam, że **Adam Kazimierz Antonowicz**, syn Z████ i H████ z domu ████████, urodzony ████████ r. w ████, który do 16 maja 2005 r. był zameldowany na pobyt stały w ████ przy ulicy ████████

Prokuratora Okręgowego
Paweł Wilkoszelski

14.06.2012

**posiada obywatelstwo polskie.**

Na podstawie art. 107 § 4 ustawy z dnia 14 czerwca 1960 r. – Kpa (D. U. z 2000 r. nr 98, poz. 1071 z późn. zm.) odstępuję od uzasadnienia decyzji, gdyż zostało uwzględnione w całości żądanie Wydziału VI do Spraw Przestępczości Gospodarczej Prokuratury Okręgowej w Opolu określone w piśmie otrzymanym 08 czerwca 2012 r. o znaku: V Ds. 10/05 zaw.



Z up. WOJEWODY OPOLSKIEGO

........................................
w Wydziale Spraw Obywatelskich i Cudzoziemców

Za zgodność

11 -07- 2013

Postanowienie jest wykonalne

Sędzia

Sygn. akt  II Kp 125/12

001651

**P O S T A N O W I E N I E**

Dnia 18 kwietnia 2012r.

**Sąd Rejonowy  w Opolu  - Wydział II Karny**   w składzie :

Przewodniczący:  SSR Piotr Wieczorek
Protokolant :     sekr. sąd.  Barbara Świerczek

Przy udziale  Prokuratora  Prokuratury  Okręgowej  w Opolu – M███████ S██████
po rozpoznaniu
**w sprawie Adama Antonowicza**
z wniosku Prokuratury Okręgowej w Opolu
w przedmiocie : zastosowania tymczasowego aresztowania na okres 14 dni
na podstawie art. 258§1 pkt. 1 kpk

podejrzanego o to, że:

I. w okresie od dnia 27 kwietnia 1998 roku do dnia 17 sierpnia 1998 roku w Brzegu,
wspólnie i w porozumieniu z innymi osobami, w celu uzyskania z Banku Zachodniego S.A.
we Wrocławiu Oddział w Namysłowie dla siebie oraz innych osób kredytów bankowych
przeznaczonych na zakup w systemie sprzedaży ratalnej w „FHU Biuro Podróży PTTK" z/s
Brzegu, którego był pełnomocnikiem, imprez turystycznych za granicą oraz na terenie kraju,
przedkładał za pośrednictwem K█████ N███████ - właściciela firmy KLN
Pośrednictwo Kredytowe z/s w Kluczborku w w/w banku nierzetelne, oraz podrobione
dokumenty mające istotne znaczenie dla uzyskania kredytów działając na szkodę Banku
Zachodniego S.A Oddział w Namysłowie i tak:

1.W dniu 27 kwietnia 1998 roku w Brzegu w celu uzyskania przez K████ D███
kredytu bankowego w wysokości 4.000 złotych, przeznaczonego na zakup w systemie
sprzedaży ratalnej w „FHU Biuro Podróży PTTK" z/s Brzegu 2 - tygodniowych
wczasów w Zakopanem, przedłożył za pośrednictwem K█████ N███████ -
właściciela firmy KLN Pośrednictwo Kredytowe z/s w Kluczborku w w/w banku
nierzetelne dokumenty na nazwisko K█████ D██████ dotyczące okoliczności
mających istotne znaczenie dla uzyskania przez w/w kredytu w postaci:
     - wniosku z dnia 27 kwietnia 1998 roku o udzielenie kredytu na zakup ratalny usługi w
     postaci 2 tygodniowych wczasów w Zakopanem, w kwocie 4.000 złotych w firmie „FHU
     Biuro Podróży PTTK" z/s Brzegu,
     - umowy kredytowej z dnia 27 kwietnia 1998 roku zawartej przez Bank Zachodni SA
     Oddział w Namysłowie z kredytobiorcą K█████ D████ na zakup w systemie
     sprzedaży ratalnej usługi w postaci 2 - tygodniowych wczasów w Zakopanem, o wartości
     4200 złotych
     - rachunku uproszczonego o numerze 11/IV/98, z dnia 27 kwietnia 1998 roku
     wystawionego przez firmę „FHU Biuro Podróży PTTK" z/s Brzegu dla K████
     D████, dokumentującego zakup 2-tygodniowych wczasów w Zakopanem dla czterech
     osób, o wartości 4200 złotych
które zawierały nieprawdziwe informacje odnośnie przeznaczenia kredytu, ponieważ
kredytowana usługa w rzeczywistości nie miała miejsca, oraz wobec faktu, iż w w/w firmie
wystawiono inny rachunek o tym samym numerze z datą 1 kwietnia1998 roku na

nazwisko A███ Z███ dokumentujący zakup usługi w postaci wycieczki na Litwę o wartości 300 złotych

2. W dniu 6 maja 1998 roku w Brzegu, w celu uzyskania przez siebie kredytu bankowego w wysokości 3.500 złotych, przeznaczonego na zakup w systemie sprzedaży ratalnej w „FHU Biuro Podróży PTTK" z/s Brzegu 2 - tygodniowych wczasów w Tunezji, przedłożył w w/w banku, za pośrednictwem K███████ N██████ - właściciela firmy KLN Pośrednictwo Kredytowe z/s w Kluczborku nierzetelne dokumenty dotyczące okoliczności mających istotne znaczenie dla uzyskania kredytu w postaci:

> wniosku z dnia 5 maja 1998 roku o przyznanie kredytu w kwocie 3.500 złotych, na zakup w systemie sprzedaży ratalnej usługi w postaci 2 - tygodniowych wczasów w Tunezji, w firmie „FHU Biuro Podróży PTTK" z/s Brzegu,

> rachunku uproszczonego o numerze 19/V/98 z dnia 27 kwietnia 1998 roku wystawionego przez firmę „FHU Biuro Podróży PTTK" z/s Brzegu dokumentującego fikcyjny zakup przez Adama Antonowicza 2-tygodniowych wczasów w Tunezji, o wartości 3.568 złotych,

> umowy kredytowej z dnia 6 maja 1998 roku, zawartej przez Bank Zachodni SA Oddział w Namysłowie z kredytobiorcą Adamem Antonowiczem, na zakup w systemie sprzedaży ratalnej usługi w postaci 2 - tygodniowych wczasów w Tunezji dla dwóch osób w kwocie 3.500 złotych

które to dokumenty zawierały nieprawdziwe informacje odnośnie przeznaczenia kredytu, ponieważ kredytowana usługa w rzeczywistości nie miała miejsca, oraz

> poświadczającego nieprawdę zaświadczenia z dnia 30 kwietnia 1998 roku o zatrudnieniu i zarobkach Adama Antonowicza w Polskim Towarzystwie Turystyczno - Krajoznawczym Oddział Ziemi Brzeskiej, na którym inna osoba podrobiła podpis Prezesa Oddziału - W███████ B███████, podczas gdy w rzeczywistości nie był on zatrudniony w tej instytucji,

3. W dniu 20 lipca 1998 roku w Brzegu, w celu uzyskania przez B█████ B████████ kredytu bankowego w wysokości 9.000 złotych, przeznaczonego na zakup w systemie sprzedaży ratalnej w „FHU Biuro Podróży PTTK" z/s Brzegu 2 - tygodniowych wczasów w Tajlandii, przedłożył, za pośrednictwem K███████ N██████ - właściciela firmy KLN Pośrednictwo Kredytowe z/s w Kluczborku w w/w banku nierzetelne dokumenty na nazwisko w/w, dotyczące okoliczności mających istotne znaczenie dla uzyskania przez nią kredytu w postaci:

> wniosku z dnia 17 lipca 1998 roku o udzielenie B█████ B████████ kredytu w kwocie 9.000 złotych na zakup w systemie sprzedaży ratalnej ratalny usługi w postaci 2 tygodniowych wczasów w Tajlandii, w firmie „FHU Biuro Podróży PTTK" z/s Brzegu,

> rachunku uproszczonego o numerze 9/VII/98 z dnia 17 lipca 1998 roku, wystawionego przez firmę „FHU Biuro Podróży PTTK" z/s Brzegu, dokumentującego fikcyjny zakup przez B█████ B████████ 2-tygodniowych wczasów w Tajlandii, o wartości 10.631,16 zł złotych,

> umowy kredytowej z dnia 20 lipca 1998 roku, zawartej przez Bank Zachodni SA Oddział w Namysłowie z kredytobiorcą B█████ B████████ na zakup w systemie sprzedaży ratalnej usługi w postaci 2 tygodniowych wczasów w Tajlandii, w kwocie 9.000 złotych

które to dokumenty zawierały nieprawdziwe informacje odnośnie przeznaczenia kredytu, ponieważ kredytowana usługa w rzeczywistości nie miała miejsca,

Za zgodność
1 1 -07- 2013
Opole, dnia
REFERENDARZ
Urszula Skowronek

001652

4. W dniu 4 sierpnia 1998 roku w Brzegu, działając w celu uzyskania przez P███ M███ kredytu bankowego w wysokości 2.000 złotych, przeznaczonego na zakup w systemie sprzedaży ratalnej, w „FHU Biuro Podróży PTTK" z/s Brzegu 2 - tygodniowych wczasów w Hiszpanii, przedłożył, za pośrednictwem K███ N███ - właściciela firmy KLN Pośrednictwo Kredytowe z/s w Kluczborku w w/w banku nierzetelne dokumenty na nazwisko P███ M███ dotyczące okoliczności mających istotne znaczenie dla uzyskania przez w/w kredytu w postaci:
  ➢ wniosku z dnia 28 lipca 1998 roku o udzielenie P███ M███ kredytu w kwocie 2.000 złotych na zakup w systemie sprzedaży ratalnej usługi w postaci wczasów w Hiszpanii, w firmie „FHU Biuro Podróży PTTK" z/s Brzegu,
  ➢ rachunku uproszczonego o numerze 98/VII/98 z dnia 28 lipca 1998 roku, wystawionego przez firmę „FHU Biuro Podróży PTTK" z/s Brzegu dokumentującego fikcyjny zakup przez P███ M███ 2-tygodniowych wczasów w Hiszpanii, dla dwóch osób o wartości 2.500 złotych
  ➢ umowy kredytowej z dnia 4 sierpnia 1998 roku, zawartej przez Bank Zachodni SA Oddział w Namysłowie z kredytobiorcą P███ M███ na zakup w systemie sprzedaży ratalnej usługi w postaci 2 tygodniowych wczasów w Hiszpanii w kwocie 2.000 złotych
które to dokumenty zawierały nieprawdziwe informacje odnośnie przeznaczenia kredytu, ponieważ kredytowana usługa w rzeczywistości nie miała miejsca,

5. W dniu 4 sierpnia 1998 roku w Brzegu, działając w celu uzyskania przez J███ K███ kredytu bankowego w wysokości 10.000 złotych, przeznaczonego na zakup w systemie sprzedaży ratalnej w „FHU Biuro Podróży PTTK" z/s Brzegu 2 - tygodniowych wczasów na Majorce, przedłożył, za pośrednictwem K███ N███ - właściciela firmy KLN Pośrednictwo Kredytowe z/s w Kluczborku w w/w banku nierzetelne dokumenty na nazwisko J███ K███ dotyczące okoliczności mających istotne znaczenie dla uzyskania przez w/w kredytu w postaci:
  ➢ wniosku z dnia 3 sierpnia 1998 roku o udzielenie J███ K███ kredytu w kwocie 10.000 złotych na zakup w systemie sprzedaży ratalnej usługi w postaci 2 - tygodniowych wczasów na Majorce, w firmie „FHU Biuro Podróży PTTK" z/s Brzegu,
  ➢ rachunku uproszczonego o numerze 101/VII/98 z dnia 31 lipca 1998 roku, wystawionego przez firmę „FHU Biuro Podróży PTTK" z/s Brzegu dokumentującego fikcyjny zakup przez Jadwigę Konieczną 2-tygodniowych wczasów na Majorce, dla czterech osób o wartości 11.176, 36 złotych
  ➢ umowy kredytowej z dnia 4 sierpnia 1998 roku, zawartej przez Bank Zachodni SA Oddział w Namysłowie z kredytobiorcą J███ K███ na zakup w systemie sprzedaży ratalnej usługi w postaci 2 tygodniowych wczasów na Majorce w kwocie 10.000 złotych
które to dokumenty zawierały nieprawdziwe informacje odnośnie przeznaczenia kredytu, ponieważ kredytowana usługa w rzeczywistości nie miała miejsca,

6. W dniu 7 sierpnia 1998 roku w Brzegu, działając w celu osiągnięcia przez H███ A███ kredytu bankowego w wysokości 10.000 złotych, przeznaczonego na zakup w systemie sprzedaży ratalnej w „FHU Biuro Podróży PTTK" z/s Brzegu 2 - tygodniowych wczasów na Teneryfie przedłożył, za pośrednictwem K███ N███ - właściciela firmy KLN Pośrednictwo Kredytowe z/s w Kluczborku w w/w banku nierzetelne dokumenty na nazwisko w/w, dotyczące okoliczności mających istotne znaczenie dla uzyskania kredytu w postaci:



Za zgodność
11 -07- 2013
REFERENDARZ
Opole, dnia    Urszula Skowronek

➢ wniosku z dnia 6 sierpnia 1998 roku o udzielenie H███ A███████ kredytu w kwocie 10 000 złotych na zakup w systemie sprzedaży ratalnej usługi w postaci 2 tygodniowych wczasów na Teneryfie w firmie „FHU Biuro Podróży PTTK" z/s Brzegu,

➢ rachunku uproszczonego o numerze 109/VIII/98 z dnia 6 sierpnia 1998 roku wystawionego przez firmę „FHU Biuro Podróży PTTK" z/s Brzegu, dokumentującego fikcyjny zakup przez H███ A██████ 2-tygodniowych wczasów na Teneryfie, dla trzech osób o wartości 10.797 złotych

➢ umowy kredytowej z dnia 7 sierpnia 1998 roku, zawartej przez Bank Zachodni SA Oddział w Namysłowie z kredytobiorcą H███ A██████z, na zakup w systemie sprzedaży ratalnej usługi w postaci 2 tygodniowych wczasów na Teneryfie w kwocie 10.000 złotych

➢ zaświadczenia z dnia 6 sierpnia 1998 roku o  zatrudnieniu i zarobkach H███ A██████ w P████ T████ T██████████ - Krajoznawczym Oddział Ziemi Brzeskiej, na którym inna osoba podrobiła podpis Prezesa Oddziału - W████████ B█████,

które to dokumenty zawierały nieprawdziwe informacje odnośnie przeznaczenia kredytu, ponieważ kredytowana usługa w rzeczywistości nie miała miejsca,

7. W dniu 10 sierpnia 1998 roku w Brzegu, działając w celu uzyskania przez W████████ B██████ kredytu bankowego w wysokości 2.400 złotych, przeznaczonego na zakup w systemie sprzedaży ratalnej w „FHU Biuro Podróży PTTK" z/s Brzegu 2 - tygodniowych wczasów na Cyprze przedłożył, za pośrednictwem K████ N████████ - właściciela firmy KLN Pośrednictwo Kredytowe z/s w Kluczborku w w/w banku nierzetelne dokumenty na nazwisko W████████ B██████ dotyczące okoliczności mających istotne znaczenie dla uzyskania przez w/w kredytu w postaci:

➢ wniosku z dnia 7 sierpnia 1998 roku o udzielenie W████████ B██████ kredytu w kwocie 2.400 złotych na zakup w systemie sprzedaży ratalnej usługi w postaci 2 tygodniowych wczasów na Cyprze, w firmie „FHU Biuro Podróży PTTK" z/s Brzegu,

➢ rachunku uproszczonego o numerze 112/VIII/98 z dnia 7 sierpnia 1998 roku, wystawionego przez firmę „FHU Biuro Podróży PTTK" z/s Brzegu dokumentującego fikcyjny zakup przez Wilhelmę Barańską 2 -          tygodniowych wczasów na Cyprze, o wartości 4.576,00 złotych,

➢ umowy kredytowej z dnia 10 sierpnia 1998 roku, zawartej przez Bank Zachodni SA Oddział w Namysłowie z kredytobiorcą W████████ B██████, na zakup w systemie sprzedaży ratalnej usługi w postaci 2-tygodniowych wczasów na Cyprze w kwocie 2.400 złotych

➢ poświadczającego nieprawdę zaświadczenia z dnia 6 sierpnia 1998 roku o zarobkach W████████ B██████ w P████ T████ T██████████ - Krajoznawczym Oddział Ziemi Brzeskiej, na którym inna osoba podrobiła podpis skarbnika - W████████ C████████,

które to dokumenty zawierały nieprawdziwe informacje odnośnie przeznaczenia kredytu, ponieważ kredytowana usługa w rzeczywistości nie miała miejsca,

8. W dniu 13 sierpnia 1998 roku w Brzegu, działając w celu uzyskania przez B███ K████ kredytu bankowego w wysokości 3.700 złotych, przeznaczonego na zakup w systemie sprzedaży ratalnej w „FHU Biuro Podróży PTTK" z/s Brzegu 2 - tygodniowych wczasów Grecji – Halkidiki, przedłożył, za pośrednictwem K████ N████████ - właściciela firmy KLN Pośrednictwo Kredytowe z/s w Kluczborku w w/w banku nierzetelne dokumenty

Za zgodność

11 -07- 2013

Opole, dnia ........... REFERENDARZ

Irmina Skowronek

001653

na nazwisko E█ K█████, dotyczące okoliczności mających istotne znaczenie dla uzyskania przez w/w kredytu w postaci:

➢ wniosku z dnia 12 sierpnia 1998 roku o udzielenie E█ K█████ kredytu w kocie 3.700 złotych na zakup w systemie sprzedaży ratalnej usługi w postaci 2 tygodniowych wczasów w Grecji – Halkidiki w firmie „FHU Biuro Podróży PTTK" z/s Brzegu,

➢ rachunku uproszczonego o numerze 113/VIII/98 z dnia 11 sierpnia 1998 roku, wystawionego przez firmę „FHU Biuro Podróży PTTK" z/s Brzegu dokumentującego fikcyjny zakup przez E█ K█████ 2-tygodniowych wczasów w Grecji - Halkidiki, o wartości 4256,80 złotych,

➢ umowy kredytowej z dnia 13 sierpnia 1998 roku, zawartej przez Bank Zachodni SA Oddział w Namysłowie z kredytobiorcą Ewą Kasprzyk, na zakup w systemie sprzedaży ratalnej usługi w postaci 2-tygodniowych wczasów w Grecji - Halkidiki, w kwocie 3.700 złotych

które to dokumenty zawierały nieprawdziwe informacje odnośnie przeznaczenia kredytu, ponieważ kredytowana usługa w rzeczywistości nie miała miejsca

9. W dniu 13 sierpnia 1998 roku w Brzegu, działając w celu uzyskania przez M█ K█████ kredytu bankowego w wysokości 10.000 złotych, przeznaczonego na zakup w systemie sprzedaży ratalnej w „FHU Biuro Podróży PTTK" z/s Brzegu 2 - tygodniowych wczasów na Malcie, przedłożył, za pośrednictwem K█████ N█████████ - właściciela firmy KLN Pośrednictwo Kredytowe z/s w Kluczborku w w/w banku nierzetelne dokumenty na nazwisko M█ K█████, dotyczące okoliczności mających istotne znaczenie dla uzyskania przez w/w kredytu w postaci:

➢ wniosku z dnia 12 sierpnia 1998 roku o udzielenie M█ K█████ kredytu w kwocie 10.000 złotych na zakup w systemie sprzedaży ratalnej usługi w postaci 2 tygodniowych wczasów na Malcie, w firmie „FHU Biuro Podróży PTTK" z/s Brzegu,

➢ rachunku uproszczonego o numerze 115/VIII/98 z dnia 11 sierpnia 1998 roku, wystawionego przez firmę „FHU Biuro Podróży PTTK" z/s Brzegu, dokumentującego fikcyjny zakup przez M█ K█████ 2-tygodniowych wczasów na Malcie o wartości 10.890,46 złotych ,

➢ umowy kredytowej z dnia 13 sierpnia 1998 roku, zawartej przez Bank Zachodni SA Oddział w Namysłowie z kredytobiorcą M█ K█████, na zakup w systemie sprzedaży ratalnej usługi w postaci 2-tygodniowych wczasów na Malcie, w kwocie 10.000 złotych

które to dokumenty zawierały nieprawdziwe informacje odnośnie przeznaczenia kredytu, ponieważ kredytowana usługa w rzeczywistości nie miała miejsca

10. W dniu 17 sierpnia 1998 roku w Brzegu, działając w celu uzyskania przez A█ R█████ kredytu bankowego w wysokości 10.000 złotych, przeznaczonego na zakup w systemie sprzedaży ratalnej w „FHU Biuro Podróży PTTK" z/s Brzegu 2 - tygodniowych wczasów w Turcji, przedłożył, za pośrednictwem K█████ N█████████ - właściciela firmy KLN Pośrednictwo Kredytowe z/s w Kluczborku w w/w banku nierzetelne dokumenty na nazwisko A█ R█████, dotyczące okoliczności mających istotne znaczenie dla uzyskania przez w/w kredytu w postaci:

➢ wniosku z dnia 14 sierpnia 1998 roku o udzielenie A█ R█████ kredytu w kwocie 10.000 złotych, na zakup w systemie sprzedaży ratalnej usługi w postaci 2-tygodniowych wczasów w Turcji, w firmie „FHU Biuro Podróży PTTK" z/s Brzegu,

> rachunku uproszczonego o numerze 120/VIII/98 z dnia 14 sierpnia 1998 roku, wystawionego przez firmę „FHU Biuro Podróży PTTK" z/s Brzegu, dokumentującego fikcyjny zakup przez A█████ R████ 2-tygodniowych wczasów w Turcji o wartości 10.362,80 złotych
> umowy kredytowej z dnia 17 sierpnia 1998 roku, zawartej przez Bank Zachodni SA Oddział w Namysłowie z kredytobiorcą A█████ R██████████, na zakup w systemie sprzedaży ratalnej usługi w postaci 2-tygodniowych wczasów w Turcji, w kwocie 10.000 złotych

które to dokumenty zawierały nieprawdziwe informacje odnośnie przeznaczenia kredytu, ponieważ kredytowana usługa w rzeczywistości nie miała miejsca

11. W dniu 17 sierpnia 1998 roku w Brzegu, działając w celu uzyskania przez █ B████ kredytu bankowego w wysokości 10.000 złotych, przeznaczonego na zakup w systemie sprzedaży ratalnej w „FHU Biuro Podróży PTTK" z/s Brzegu 2 - tygodniowych wczasów w Turcji, przedłożył, za pośrednictwem K███ N██████ - właściciela firmy KLN Pośrednictwo Kredytowe z/s w Kluczborku w w/w banku nierzetelne dokumenty na nazwisko █ B████, dotyczące okoliczności mających istotne znaczenie dla uzyskania przez w/w kredytu w postaci:

> wniosku z dnia 14 sierpnia 1998 roku o udzielenie █ B████ kredytu w kwocie 10 000 złotych na zakup w systemie sprzedaży ratalnej usługi w postaci 2 tygodniowych wczasów w Turcji w „FHU Biuro Podróży PTTK" z/s Brzegu,
> rachunku uproszczonego o numerze nr 119/VIII/98 z dnia 14 sierpnia 1998 roku, wystawionego przez firmę „FHU Biuro Podróży PTTK" z/s Brzegu, dokumentującego fikcyjny zakup przez █ B████ 2-tygodniowych wczasów w Turcji dla czterech osób o wartości 10.362,80 złotych
> umowy kredytowej z dnia 17 sierpnia 1998 roku, zawartej przez Bank Zachodni S.A. Oddział w Namysłowie z kredytobiorcą █ B████ na zakup w systemie sprzedaży ratalnej usługi w postaci 2-tygodniowych wczasów w Turcji, w kwocie 10.000 złotych

które to dokumenty zawierały nieprawdziwe informacje odnośnie przeznaczenia kredytu, ponieważ kredytowana usługa w rzeczywistości nie miała miejsca,

**tj. o przestępstwo z art. 3 § 1 Ustawy z dnia 12 października 1994 roku o ochronie obrotu gospodarczego i zmianie niektórych przepisów prawa karnego w zw. z art. 265 § 1 dkk przy zastosowaniu art.10 § 2 dkk i art. 58 § 1 dkk w zw. z art. 4 § 1 dkk.**

II. w okresie od 13 do 16 października 2009 roku w Konsulacie Generalnym RP w Sao Paulo, działając w krótkich odstępach czasu, w wykonaniu z góry powziętego zamiaru, w celu uzyskania dla siebie paszportu tymczasowego, podstępnie wprowadził w błąd wicekonsula w/w placówki dyplomatycznej Tomasza Łosika w ten sposób, że :
- w dniu 13 października 2009 roku przedłożył w/w wniosek o wydanie dokumentu paszportowego, w którym podał nieprawdziwe dane personalne wnioskodawcy, a w miejscu podpisu składającego wniosek, oraz w miejscu podpisu posiadacza paszportu podrobił podpis J████ A████ A████████, podpisując się za niego oraz,
-okazał jako swój dokument tożsamości zniszczony paszport o numerze AM ████361 wystawiony przez Wojewodę Opolskiego na nazwisko brata J████ A████ A████████, po czym,

001654

- po uprzednim pouczeniu o odpowiedzialności karnej przewidzianej w art. 233 § 1 kk i inne
złożył fałszywe pisemne oświadczenie o okolicznościach zniszczenia w/w dokumentu
paszportowego, na którym podrobił podpis brata J█████ A████ A████████, a następnie
-w dniu 16 października 2009 roku, w miejscu podpisu osoby odbierającej paszport podrobił
podpis J███ A███ A████████, podpisując się za niego
 w wyniku czego wyłudził paszport tymczasowy o numerze PA ███012 na nazwisko J█
A████ A████████ ze swoim wizerunkiem, w którym poświadczono nieprawdę co do
tożsamości posiadacza paszportu,

**tj. o przestępstwo z art. 272 kk w zw. z art.233 § 6 w zw. z § 1 kk i art. 270 § 1kk przy
zastosowaniu art.11 § 2kk w zw. z art.12 kk**


III. w dniu 20 października 2009 roku w Wydziale Konsularnym Ambasady RP w Londynie
usiłował wyłudzić poświadczenie nieprawdy w postaci paszportu  10 – letniego na nazwisko
brata J█████ A████ A████████ przedkładając wniosek o wydanie w/w dokumentu
paszportowego, w którym podał nieprawdziwe dane personalne wnioskodawcy, oraz na
którym, w miejscu podpisu składającego wniosek, a także w miejscu podpisu posiadacza
paszportu podrobił podpis brata J█████ A████ A████████, a nadto okazał pracownikowi
konsulatu wyłudzony w Konsulacie Generalnym RP w Sao Paulo paszport tymczasowy o
numerze PA ███012 wystawiony na nazwisko brata J████ A████ A████████, jako
dokument potwierdzający swoją tożsamość, a także, po uprzednim pouczeniu o
odpowiedzialności karnej przewidzianej w art. 233 § 1 kk złożył fałszywe pisemne
oświadczenie o okolicznościach zniszczenia paszportu o numerze AM ███361
wystawionego przez Wojewodę Opolskiego na nazwisko brata J████ A████ A████,
na którym w miejscu podpisu osoby składającej wyjaśnienia podrobił podpis J███ A█
A████████ usiłując w ten sposób podstępnie wprowadzić w błąd urzędnika konsularnego
w/w placówki dyplomatycznej, upoważnionego do wystawienia dokumentu, lecz
zamierzonego celu nie osiągnął z uwagi na podjęte przez niego czynności weryfikacyjne,
**tj. o przestępstwo z art.13 § 1kk w zw. z art.272 kk w zw. z art.273 kk i art.233 § 6 w zw.
z § 1 kk i art.270 § 1 kk przy zastosowaniu art.11§2kk.**


postanawia:

zastosować    tymczasowe   aresztowanie   wobec   podejrzanego   Adama   Antonowicza   s.
Z██████ i H████ zd. B████████, ur. ████████ r. w ████ -  na okres 14 dni od dnia
zatrzymania.

**Uzasadnienie:**

    **Adam Antonowicz**  pozostaje pod zarzutem popełnienia czynów z art. 3 § 1 Ustawy z
dnia 12 października 1994 roku o ochronie obrotu gospodarczego i zmianie niektórych
przepisów prawa karnego w zw. z art. 265 § 1 dkk przy zastosowaniu art.10 § 2 dkk i art. 58 §
1 dkk w zw. z art. 4 § 1 dkk oraz z art. 272 kk w zw. z art.233 § 6 w zw. z § 1 kk i art. 270 §
1kk przy zastosowaniu art.11 § 2kk w zw. z art.12 kk i z art. 13 § 1kk w zw. z art.272 kk w
zw. z art.273 kk i art.233 § 6 w zw. z § 1 kk i art.270 § 1 kk przy zastosowaniu art.11§2kk i
sprawstwo podejrzanego co do  popełnienia zarzucanych mu czynów zostało w wysokim
stopniu uprawdopodobnione zebranym dotąd materiałem dowodowym w śledztwie sygn. V
Ds. 10/05 Prokuratury Okręgowej w Opolu.



Za zgodność
1 1 -07- 2013
REFERENDARZ
Opole, dnia
Urszula Skowronek

Postanowieniem z dnia 16.07.2003r. Prokurator Okręgowy w Opolu zastosował wobec Adama Antonowicza środek zapobiegawczy w postaci dozoru Policji oraz zakazu opuszczania kraju połączonego z zatrzymaniem paszportu, albowiem z uzyskanych informacji wynikało, iż podejrzany nie przebywał w miejscu zameldowania w Brzegu ani też nie kontaktował się z Piotrem Kamińskim, którego upoważnił do odbioru korespondencji.

Z uwagi na okoliczność, iż podejrzany Adam Antonowicz nie stawiał się na kierowane wobec niego wezwania, a następnie mając świadomość toczącego się przeciwko niemu postępowania opuścił kraj w celu uniknięcia odpowiedzialności karnej, postanowieniem z dnia 3.10.2003r. śledztwo V Ds. 25/03 zawieszono.

Pismem z dnia 8.12.2003r. obrońca podejrzanego złożył wniosek o uchylenie zakazu opuszczania kraju, informując, iż A. Antonowicz przebywa w celach zarobkowych we Włoszech. Powyższy wniosek nie został uwzględniony,  a podejrzany odmówił powrotu do kraju.

Zarządzeniem z dnia 25.06.2004r. wszczęto poszukiwania krajowe  podejrzanego A. Antonowicza w celu ustalenia miejsca jego pobytu.

Postanowieniem z dnia 30.03.2005r. podjęto zawieszone śledztwo V Ds. 25/03. Sprawie nadano sygnaturę V Ds. 10/05. Jednocześnie wydano postanowienie o zmianie podejrzanemu A. Antowiczowi zarzutu na czyn z art. 297§1 kk i art. 270§1 kk w zw. z art. 11§2 kk i art. 12 kk, po czym śledztwo zawieszono.

Postanowieniem z dnia 22.04.2005r. Sąd Rejonowy w Opolu (sygn. akt II Kp 105/05) wydał postanowienie o tymczasowym aresztowaniu podejrzanego Adama Antonowicza na okres 7 dni od daty zatrzymania. Postanowienie zostało wydane w związku z zarzucanym podejrzanemu czynem z art. 297§1 kk i art. 270§1 kk w zw. z art. 11§2 kk i art. 12 kk w ramach śledztwa V Ds. 10/05.

Postanowieniem z dnia 4.05.2005r. zarządzono poszukiwania podejrzanego listem gończym.

W dniu 16.11.2007r. uzyskano informacje, z których wynika, że Adam Antonowicz przebywał na terytorium Wielkiej Brytanii, a następnie z uwagi na wejście Polski do Unii Europejskiej i związaną z tym możliwość uskutecznienia poszukiwań międzynarodowych wyjechał do USA.

Postanowieniem z dnia 16.01.2008r. Prokurator Okręgowy w Opolu dokonał uzupełnienia i zmiany zarzucanego A. Antonowiczowi czynu na przestępstwo z art. 286§1 kk i art. 297§1 kk i art. 270§1 kk w zw. z art. 11§2 kk i art. 12 kk. Jednocześnie w dniu 18.01.2008r. prokurator złożył wniosek o zmianę postanowienia o tymczasowym aresztowaniu A. Antonowicza poprzez uwzględnienie w postanowieniu o tymczasowym aresztowaniu wszystkich stawianych mu zarzutów i zastosowanie rzeczonego środka zapobiegawczego na okres 14 dni od daty zatrzymania, albowiem z uwagi na konieczność wszczęcia procedury ekstradycyjnej zachodziła konieczność objęcia postanowieniem o tymczasowym aresztowaniu wszystkich zarzucanych podejrzanemu czynów.

Postanowieniem z dnia 26.02.2008r. Sąd Rejonowy w Opolu (sygn. akt II Kp 22/08) zmienił zastosowane postanowieniem tegoż Sądu z dnia 22.04.2005r. tymczasowe aresztowanie zgodnie z wnioskiem prokuratora.

Postanowieniem z dnia 27.12.2010r. Prokurator Okręgowy w Opolu uzupełnił i zmienił zarzucany A. Antonowiczowi czyn na przestępstwo z art. 3§1 ustawy z dnia 12 października 1994r. o ochronie obrotu gospodarczego i zmianie niektórych przepisów prawa karnego w zw. z art. 265§1 dkk w zw. z art. 10§2 dkk i art. 58§1 dkk w zw. z art. 4§1 dkk.

Niezależnie od powyższego pismem z dnia 27.10.2009r. Ambasada RP w Londynie zawiadomiła tut. Prokuraturę o przestępstwie polegającym na wyłudzeniu przez Adama Antonowicza w Sao Paulo, w Brazylii, poświadczenia nieprawdy w postaci paszportu tymczasowego wydanego na nazwisko J█████ A████ – brata podejrzanego, za którego

001655

podawał się Adam Antonowicz, a nadto usiłowania wyłudzenia poświadczenia nieprawdy – paszportu w Londynie. Sprawę zarejestrowano pod sygnaturą VI Ds. 25/09.

W związku z powyższym postanowieniem z dnia 08.03.2010r. przedstawiono Adamowi Antonowiczowi zarzut popełnienia czynu z art. 272 kk i art.233 § 6 kk i art.270 § 1kk w zw. z art.11 § 2kk i art.12 kk oraz z art.13 ·1kk w zw. z art.272 kk i art.273 kk i art. 233 § 6 i art.270 § 1 kk w zw. z art.11§2kk.

Postanowieniem z dnia 29.04.2010r. zawieszono śledztwo VI Ds. 25/09, które połączono do akt zawieszonego śledztwa V Ds. 10/05.

W dniu 4.03.2011r.Prokuartor Okręgowy w Opolu złożył wniosek o zmianę i uzupełnienie postanowienia Sądu Rejonowego w Opolu z dnia 26.02.2008r. (II Kp 22/08) w przedmiocie tymczasowego aresztowania poprzez objęcie w/w postanowieniem wszystkich zarzucanych podejrzanemu czynów.

Postanowieniem z dnia 20.04.2011r. Sąd Rejonowy w Opolu postanowił rzeczonego wniosku nie uwzględnić, albowiem w ocenie Sądu brak jest w procedurze karnej podstaw prawnych do wystąpienia z takim wnioskiem.

W dniu 1.06.2011r. Prokurator Okręgowy w Opolu złożył wniosek o uchylenie dotychczasowego środka zapobiegawczego w postaci tymczasowego aresztowania zastosowanego postanowieniem z dnia 26.02.2008r. i jednoczesne zastosowanie wobec Adama Antonowicza tymczasowego aresztowania na okres 14 dni od dnia zatrzymania aktualnie podejrzanego o opisane powyżej przestępstwo z art. 3 § 1 Ustawy z dnia 12 października ·1994 roku o ochronie obrotu gospodarczego i zmianie niektórych przepisów prawa karnego w zw. z art. 265 § 1 dkk przy zastosowaniu art.10 § 2 dkk i art. 58 § 1 dkk w zw. z art. 4 § 1 dkk, a nadto przestępstwo z art. 272 kk w zw. z art.233 § 6 w zw. z § 1 kk i art.270 § 1kk przy zastosowaniu art.11 § 2kk w zw. z art.12 kk oraz o przestępstwo z art.13 § 1kk w zw. z art.272 kk w zw. z art.273 kk i art.233 § 6 w zw. z § 1 kk i art.270 § 1 kk przy zastosowaniu art.11§2kk.

Postanowieniem z dnia 12.07.2011r. Sąd Rejonowy w Opolu ( II Kp 187/11) nie uwzględnił wskazanego wyżej wniosku prokuratora, argumentując, iż nadal pozostają aktualne przesłanki do stosowania tymczasowego aresztowania, a wydanie postanowienia zgodnie z petitum Prokuratora prowadziłoby do wewnętrznej sprzeczności wynikającej ze stwierdzenia, iż wobec podejrzanego jednocześnie nie istnieją i istnieją przesłanki do stosowania tymczasowego aresztowania.

Postanowieniem z dnia 21.07.2011r. Sąd Okręgowy w Opolu (sygn. akt VII Kz 313/11) po rozpoznaniu zażalenia prokuratora na rzeczone postanowienie postanowił zaskarżone postanowienie utrzymać w mocy, wyrażając pogląd, iż dokonana przez prokuratora zmiana stawianych podejrzanemu zarzutów nie rodzi automatycznie potrzeby wydania kolejnego postanowienia o zastosowaniu tymczasowego aresztowania, skoro środek taki już zastosowano w jednym z prowadzonych postępowań. Sąd zauważył, że fakt uprawdopodobnienia sprawstwa podejrzanego jawi się jako oczywisty, podobnie jak oczywistym jest fakt, że podejrzany od kilku lat ukrywa się przed wymiarem sprawiedliwości.

Postanowieniem z dnia 20 marca 2012r. Prokurator Okręgowy w Opolu uchylił środek zapobiegawczy w postaci tymczasowego aresztowania podejrzanego Adama Antonowicza na okres 14 dni od dnia zatrzymania, zastosowany postanowieniem Sądu Rejonowego w Opolu z dnia 26 lutego 2008 roku, sygnatura akt II Kp 22/08, albowiem co prawda aktualna pozostaje podstawa stosowania wobec Adama Antonowicza tymczasowego aresztowania, o której mowa w art. 258§1 pkt 1 kpk - to jest uzasadniona obawa ucieczki oraz ukrywania się oskarżonego, gdy nie ma on w kraju stałego miejsca pobytu, a zebrane dowody wskazują na duże prawdopodobieństwo, że w/w podejrzany popełnił zarzucane mu przestępstwa (art. 249§1 kpk), to jednak nie można było stwierdzić, aby przyczyny, dla których Sąd Rejonowy

w Opolu wydał postanowienie o zaocznym tymczasowym aresztowaniu podejrzanego nie uległy zmianie.

Uchylając dotychczasowe postanowienie o tymczasowym aresztowaniu zwrócono uwagę na okoliczność, iż celem stosowania środków zapobiegawczych jest zapewnienie prawidłowego toku postępowania. Zabezpieczenie prawidłowego toku postępowania polega na stworzeniu dla procesu karnego takich warunków, by mógł być prowadzony bez przeszkód i by zostały osiągnięte cele postępowania karnego.

Wniosek prokuratora o zastosowanie tymczasowego aresztowania wobec podejrzanego na okres 14 dni jest zasadny.

Prokurator zasadnie we wniosku wykazał, iż stosowany w dotychczasowym kształcie środek zapobiegawczy w postaci tymczasowego aresztowania nie  pozwalał na osiągnięcie celów śledztwa  prowadzonego pod łączną sygnaturą V Ds. 10/05, obejmującego dodatkowo materiały śledztwa VI Ds. 25/09, gdyż nie umożliwiał wdrożenia procedury ekstradycyjnej w stosunku do wszystkich zarzucanych podejrzanemu czynów. Z tych samych powodów uchylone postanowienie o tymczasowym aresztowaniu nie pozwalało na zastosowanie wobec A. Antonowicza europejskiego nakazu aresztowania, którego realizacja umożliwiłaby przeprowadzenie postępowania przygotowawczego w stosunku do wszystkich przypisywanych mu przestępstw.

Zgodnie z zasadą specjalności wynikającą z art. 596 kpk  osoba wydana nie może być bez zgody państwa wydającego ścigana, skazana ani pozbawiona wolności w celu wykonania kary za inne przestępstwo popełnione przed dniem wydania niż to, w związku z którym nastąpiło wydanie. Analogiczna zasada w przypadku zatrzymania na podstawie europejskiego nakazu aresztowania została wyrażona w art. 607e. § 1, zgodnie z którym osoby przekazanej w wyniku wykonania nakazu nie można ścigać za przestępstwa inne niż te, które stanowiły podstawę przekazania, ani wykonać orzeczonych wobec niej za te przestępstwa kar pozbawienia wolności albo innych środków polegających na pozbawieniu wolności.

Bezspornie podejrzany mając wiedzę na temat toczącego się przeciwko niemu postępowania karnego oraz zastosowanych wobec niego środków zapobiegawczych ukrywa się przed organami ścigania, przebywając w ciągu ostatnich 9 lat na terenie Europy, Stanów Zjednoczonych Ameryki Północnej, Brazylii oraz Azji, odmawiając jednocześnie powrotu do kraju. Prowadzone do chwili obecnej czynności poszukiwawcze za w/w, jak również próby ustalenia aktualnego miejsca pobytu zarówno w kraju, jak i poza jego granicami okazały się bezskuteczne. Podejmowane przez niego działania mające na celu uzyskanie w polskich palcówkach dyplomatycznych paszportu wydanego na dane osobowe jego brata miały na celu umożliwienie dalszego swobodnego poruszania się podejrzanego za granicą pomimo stosowania środków zapobiegawczych.

W toku śledztwa zachodzi konieczność wykonania szeregu czynności procesowych z udziałem Adama Antonowicza, w tym m.in. ogłoszenie postanowienia o uzupełnieniu i zmianie zarzutów, przesłuchanie w charakterze podejrzanego, sprawdzenie ewentualnej linii obrony, jak również przeprowadzenie konfrontacji pomiędzy w/w a współpodejrzanymi i świadkami.

Jednocześnie wobec istnienia wykazanych powyżej przesłanek zastosowania tymczasowego aresztowania brak jest przesłanek negatywnych, o których mowa w art. 259 kpk.

Zachowanie podejrzanego nosi więc znamiona utrudniania toczącego się postępowania karnego, stąd Sąd zastosował tymczasowe aresztowanie na wskazany okres.



Certified translation from the Polish language

*/national emblem of the Republic of Poland/*

### REPUBLIC OF POLAND
### MINISTER OF JUSTICE

DWM PC II 073 – 300/13

Warsaw, 2013-07-23

**Mr. John Kerry**
**Secretary of State**
**United States of America**

By virtue of article 1, article 2 section 1 and 2 and article 12 of the Treaty between the Republic of Poland and the United States of America on extradition of July 10, 1996, as well as by virtue of article 5 section 2 of the Treaty between the European Union and the United States of America on extradition of June 25, 2003, enclosed please kindly find a request of the District Prosecutor in Opole of July 8, 2013, file reference number V Ds. 10/05, for provisional arrest and extradition of Polish citizen Adam Kazimierz Antonowicz, suspected of perpetration of offenses consisting in submission of false and certifying untruth documents for the purpose of obtaining credits, as well as of an offense of deceitful misleading of a public official, forgery of a document and obtaining of a passport under false pretenses, which certified untruth as to the identity of the passport holder.

Enclosed please also find all documents required for submission with the request.

Sharing the position expressed in the letter rogatory, I kindly request its positive consideration.

The matter of Adam Kazimierz Antonowicz is registered in the Prosecutor General's Office of the Republic of Poland, supervising extradition proceedings, under the file reference number - PG V Oz₁ 825/13; I therefore request the authorities of the United States of America for addressing further correspondence related to these presents to this authority.

*Oblong stamp:*
by authorization of the
MINISTER OF JUSTICE
*/-/ illegible signature*
Wojciech Hajduk
UNDERSECRETARY OF STATE

*Official round seal with the state emblem of the Republic of Poland in the center and the following inscription on the rim:* "MINISTER OF JUSTICE, 4".

1

*Oblong stamp:*
DISTRICT PROSECUTOR'S OFFICE
ul. Reymonta 24
45-954 OPOLE, tel. 077 454-20-74

Opole, July 08, 2013

File reference number V Ds. 10/05

Request

for provisional arrest and extradition

I kindly request provisional arrest and extradition of:

**Adam Kazimierz Antonowicz**

son of Z█████ and H████ nee B█████

born on █████████ in █████

citizen of the Republic of Poland

lastly domiciled in ███ at █████████

Pesel ████████899

identifying himself with identity card of series DD and number ███062, issued by the Mayor of the City of Brzeg.

appearing with defender of choice, counselor Wojciech Solarewicz of Solicitor's Office with its registered office in Brzeg at Piastowska 14

The evidence collected in the case of file reference number V Ds. 10/05 conducted by the District Prosecutor's Office in Opole allowed for issue of a decision on charging Adam Antonowicz with the following:

I. In the period from April 27, 1998 through August 17, 1998 in Brzeg, jointly and in agreement with other individuals, for the purpose of obtaining from Bank Zachodni Spółka Akcyjna (Public Limited Company) in Wrocław Branch in Namysłów for himself and others bank credits intended for purchase under an installments system from Firma Handlowo - Usługowa Biuro Podróży PTTK (Travel Agency) with its registered office in Brzeg, of which he was a plenipotentiary, of tourism events abroad and in Poland, he submitted through the agency of K█████ N█████ - owner of the firm KLN Pośrednictwo Kredytowe (Credit Agency) with its registered office in Kluczbork to the aforementioned bank unreliable and forged documents material for obtaining of credits, acting to the detriment of Bank Zachodni Spółka Akcyjna Branch in Namysłów, and so:

   1. On April 27, 1998 in Brzeg, for the purpose of obtaining by K█████ D█████ of a bank credit in the amount of 4,000 zlotys, intended for purchase under an installments system from Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg of a 2 - weeks' vacation in Zakopane, he submitted through the agency of K█████ N█████ - owner of the firm KLN Pośrednictwo Kredytowe with its registered office in Kluczbork to the aforementioned bank unreliable documents in the name of K█████ █████ concerning circumstances material for obtaining of the credit by her in the form of:

> ➢ application of April 27, 1998 for granting of credit for installment purchase of service in the form of a 2-weeks' vacation in Zakopane in the amount of 4,000 zlotys from Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg,

> ➢ credit contract of April 27, 1998 concluded by Bank Zachodni Spółka Akcyjna Branch in Namysłów with borrower K███████ D█████ for purchase under an installment system of service in the form of a 2 - weeks' vacation in Zakopane worth 4200 zlotys,

> ➢ simplified bill of number 11/IV/98 of April 27, 1998 issued by Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg for K███████ D█████, documenting purchase of a 2- weeks' vacation in Zakopane for four persons worth 4200 zlotys

which contained untrue information regarding allocation of credit, since the credited service actually did not take place, and in view of the fact that the afore-mentioned firm issued another bill of the same number dated April 1, 1998 in the name of A███ Z███, documenting purchase of service in the form of an excursion to Lithuania worth 300 zlotys,

2.   On May 06, 1998 in Brzeg, for the purpose of obtaining by himself of a bank credit in the amount of 3.500 zlotys, intended for purchase under an installments system from Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg of a 2 - weeks' vacation in Tunisia, he submitted to the aforementioned bank through the agency of K███████ N███████ - owner of the firm KLN Pośrednictwo Kredytowe with its registered office in Kluczbork unreliable documents concerning circumstances material for obtaining of the credit in the form of:

> ➢ application of May 5, 1998 for granting of credit in the amount of 3,500 zlotys for purchase under an installment system of service in the form of a 2 - weeks' vacation in Tunisia from Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg,

> ➢ simplified bill of number 19/V/98 of April 27, 1998 issued by Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg, documenting fictitious purchase by Adam Antonowicz of a 2- weeks' vacation in Tunisia, worth 3.568 zlotys.

> ➢ credit contract of May 06, 1998 concluded by Bank Zachodni Spółka Akcyjna Branch in Namysłów with borrower Adam Antonowicz for purchase under an installment system of service in the form of a 2 - weeks' vacation in Tunisia for two persons in the amount of 3,500 zlotys,

which documents contained untrue information concerning allocation of the credit, since the credited service actually did not take place, and

> ➢ a certifying untruth certificate of April 30, 1998 of employment and earnings of Adam Antonowicz at Polskie Towarzystwo Turystyczno - Krajoznawcze Oddział Ziemi Brzeskiej, on which another person forged the signature of the President of the Branch Office - W███ B███, while in reality he was not employed by this institution,

3.   On July 20, 1998 in Brzeg, for the purpose of obtaining by ███████ █████████ of a bank credit in the amount of 9,000 zlotys, intended for purchase under an installments system from Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg of a 2 - weeks' vacation in Thailand, he submitted through the agency of K███████ N███████ - owner of the firm KLN Pośrednictwo Kredytowe with its registered office in Kluczbork to the aforementioned bank unreliable documents in the name of ███████ ████████ concerning circumstances material for obtaining of the credit by her in the form of:

> ➢   application of July 17, 1998 for granting to ███████ ████████ of credit in the amount of 9,000 zlotys for purchase under an installment system of service in the form of a 2 - weeks' vacation in Thailand from Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg,

> ➢   simplified bill of number 9/VII/98 of July 17, 1998 issued by Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg, documenting fictitious purchase by ███████ ████████ of a 2-weeks' vacation in Thailand, worth 10,631.16 zlotys,

> ➢   credit contract of July 20, 1998 concluded by Bank Zachodni Spółka Akcyjna Branch in Namysłów with borrower ███████ █████████ for purchase under an installment system of service in the form of a 2 - weeks' vacation in Thailand in the amount of 9,000 zlotys,

which documents contained untrue information concerning allocation of the credit, since the credited service actually did not take place.

4.   On August 04, 1998 in Brzeg, acting for the purpose of obtaining by P███████ M███████ of a bank credit in the amount of 2,000 zlotys, intended for purchase under an installments system from Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg of a 2 - weeks' vacation in Spain, he submitted through the agency of K███████ N███████ - owner of the firm KLN Pośrednictwo Kredytowe with its registered office in Kluczbork to the aforementioned bank unreliable documents in the name of P███ M███████ concerning circumstances material for obtaining of the credit by P███ M███████ in the form of:

> ➢   application of July 28, 1998 for granting to P███ M███████ of credit in the amount of 2,000 zlotys for purchase under an installment system of service in the form of a vacation in Spain from Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg,

> ➢   simplified bill of number 98/VII/98 of July 28, 1998 issued by Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg, documenting fictitious purchase by P███ M███████ of a 2- weeks' vacation in Spain for two persons worth 2,500 zlotys,

> ➢   credit contract of August 04, 1998 concluded by Bank Zachodni Spółka Akcyjna Branch in Namysłów with borrower P███ M███████ for purchase under an installment system of service in the form of a 2 - weeks' vacation in Spain in the amount of 2,000 zlotys,

which documents contained untrue information concerning allocation of the credit, since the credited service actually did not take place.

5.  On August 04, 1998 in Brzeg, acting for the purpose of obtaining by Jadwiga Konieczna of a bank credit in the amount of 10,000 zlotys, intended for purchase under an installments system from Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg of a 2 - weeks' vacation in Majorca, he submitted through the agency of K███████ N████████ - owner of the firm KLN Pośrednictwo Kredytowe with its registered office in Kluczbork to the aforementioned bank unreliable documents in the name of J████ K████████ concerning circumstances material for obtaining of the credit by the above-mentioned in the form of:

    ➢  application of August 03, 1998 for granting to J████ K████████ of credit in the amount of 10,000 zlotys for purchase under an installment system of service in the form of a 2 - weeks' vacation in Majorca from Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg,

    ➢  simplified bill of number 101/VII/98 of July 31, 1998 issued by Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg, documenting fictitious purchase by J████ K████████ of a 2- weeks' vacation in Majorca for four persons worth 11,176.36 zlotys,

    ➢  credit contract of August 04, 1998 concluded by Bank Zachodni Spółka Akcyjna Branch in Namysłów with borrower J████ K████████ for purchase under an installment system of service in the form of a 2 - weeks' vacation in Majorca in the amount of 10,000 zlotys,

    which documents contained untrue information concerning allocation of the credit, since the credited service actually did not take place.

6.  On August 07, 1998 in Brzeg, acting for the purpose of obtaining by H███ A████████ of a bank credit in the amount of 10,000 zlotys, intended for purchase under an installments system from Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg of a 2 - weeks' vacation in Tenerife, he submitted through the agency of K███████ N████████ - owner of the firm KLN Pośrednictwo Kredytowe with its registered office in Kluczbork to the aforementioned bank unreliable documents in the name of H███ A████████ concerning circumstances material for obtaining of the credit in the form of:

    ➢  application of August 06, 1998 for granting to H███ A████████ of credit in the amount of 10,000 zlotys for purchase under an installment system of service in the form of a 2 - weeks' vacation in Tenerife from Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg,

    ➢  simplified bill of number 109/VIII/98 of August 06, 1998 issued by Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg, documenting fictitious purchase by H███ A████████ of a 2- weeks' vacation in Tenerife for three persons worth 10,797 zlotys,

    ➢  credit contract of August 07, 1998 concluded by Bank Zachodni Spółka Akcyjna Branch in Namysłów with borrower H███ A████████ for purchase under an installment system of service in the form of a 2 - weeks' vacation in Tenerife in the amount of 10,000 zlotys,

> certificate of August 6, 1998 of employment and earnings of H█ A█ at Polskie Towarzystwo Turystyczno - Krajoznawcze Oddział Ziemi Brzeskiej, on which another person forged the signature of the President of the Branch Office - W█ B█,

which documents contained untrue information concerning allocation of the credit, since the credited service actually did not take place.

7. On August 10, 1998 in Brzeg, acting for the purpose of obtaining by W█ B█ of a bank credit in the amount of 2,400 zlotys, intended for purchase under an installments system from Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg of a 2 - weeks' vacation in Cyprus, he submitted through the agency of K█ N█ - owner of the firm KLN Pośrednictwo Kredytowe with its registered office in Kluczbork to the aforementioned bank unreliable documents in the name of W█ B█ concerning circumstances material for obtaining of the credit by her in the form of:

> application of August 07, 1998 for granting to W█ B█ of credit in the amount of 2,400 zlotys for purchase under an installment system of service in the form of a 2 - weeks' vacation in Cyprus from Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg,

> simplified bill of number 112/VIII/98 of August 07, 1998 issued by Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg, documenting fictitious purchase by W█ B█ of a 2- weeks' vacation in Cyprus, worth 4,576.00 zlotys,

> credit contract of August 10, 1998 concluded by Bank Zachodni Spółka Akcyjna Branch in Namysłów with borrower W█ B█ for purchase under an installment system of service in the form of a 2 - weeks' vacation in Cyprus in the amount of 2,400 zlotys,

> a certifying untruth certificate of August 6, 1998 of earnings of W█ B█ at Polskie Towarzystwo Turystyczno - Krajoznawcze Oddział Ziemi Brzeskiej, on which another person forged the signature of the treasurer - W█ C█,

which documents contained untrue information concerning allocation of the credit, since the credited service actually did not take place.

8. On August 13, 1998 in Brzeg, acting for the purpose of obtaining by B█ K█ of a bank credit in the amount of 3,700 zlotys, intended for purchase under an installments system from Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg of a 2 - weeks' vacation in Greece - Halkidiki, he submitted through the agency of K█ N█ - owner of the firm KLN Pośrednictwo Kredytowe with its registered office in Kluczbork to the aforementioned bank unreliable documents in the name of B█ K█ concerning circumstances material for obtaining of the credit by her in the form of:

> application of August 12, 1998 for granting to B█ K█ of credit in the amount of 3,700 zlotys for purchase under an installment system of service in the form of a 2 - weeks' vacation in Greece - Halkidiki from Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg,

> simplified bill of number 113/VIII/98 of August 11, 1998 issued by Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg, documenting fictitious purchase by E█ K█ of a 2- weeks' vacation in Greece - Halkidiki, worth 4,256.80 zlotys,

> credit contract of August 13, 1998 concluded by Bank Zachodni Spółka Akcyjna Branch in Namysłów with borrower E█ K█ for purchase under an installment system of service in the form of a 2 - weeks' vacation in Greece - Halkidiki in the amount of 3,700 zlotys,

which documents contained untrue information concerning allocation of the credit, since the credited service actually did not take place.

9.  On August 13. 1998 in Brzeg, acting for the purpose of obtaining by M█ K█ of a bank credit in the amount of 10,000 zlotys, intended for purchase under an installments system from Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg of a 2 - weeks' vacation in Malta, submitted through the agency of K█ N█ - owner of the firm KLN Pośrednictwo Kredytowe with its registered office in Kluczbork to the aforementioned bank unreliable documents in the name of M█ K█ concerning circumstances material for obtaining of the credit by him in the form of:

> application of August 12, 1998 for granting to M█ K█ of credit in the amount of 10,000 zlotys for purchase under an installment system of service in the form of a 2 - weeks' vacation in Malta from Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg.

> simplified bill of number 115/VIII/98 of August 11, 1998 issued by Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg, documenting fictitious purchase by M█ K█ of a 2- weeks' vacation in Malta worth 10,890.46 zlotys,

> credit contract of August 13, 1998 concluded by Bank Zachodni Spółka Akcyjna Branch in Namysłów with borrower M█ K█ for purchase under an installment system of service in the form of a 2 - weeks' vacation in Malta in the amount of 10,000 zlotys,

which documents contained untrue information concerning allocation of the credit, since the credited service actually did not take place.

10. On August 17, 1998 in Brzeg, acting for the purpose of obtaining by Adam Romaniszyn of a bank credit in the amount of 10,000 zlotys, intended for purchase under an installments system from Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg of a 2 - weeks' vacation in Turkey, he submitted through the agency of K█ N█ - owner of the firm KLN Pośrednictwo Kredytowe with its registered office in Kluczbork to the aforementioned bank unreliable documents in the name of Adam Romaniszyn concerning circumstances material for obtaining of the credit by him in the form of:

> application of August 14, 1998 for granting to A█ R█ of credit in the amount of 10,000 zlotys for purchase under an installment system of service in the form of a 2 - weeks' vacation in Turkey from Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg,

> ➤ simplified bill of number 120/VIII/98 of August 14, 1998 issued by Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg, documenting fictitious purchase by A█ R█████ of a 2- weeks' vacation in Turkey, worth 10,362.80 zlotys,

> ➤ credit contract of August 17, 1998 concluded by Bank Zachodni Spółka Akcyjna Branch in Namysłów with borrower A████ R█████ for purchase under an installment system of service in the form of a 2 - weeks' vacation in Turkey in the amount of 10,000 zlotys,

which documents contained untrue information concerning allocation of the credit, since the credited service actually did not take place.

11. On August 17, 1998 in Brzeg, acting for the purpose of obtaining by Irena Bałabuch of a bank credit in the amount of 10,000 zlotys, intended for purchase under an installments system from Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg of a 2 - weeks' vacation in Turkey, he submitted through the agency of K████ N██████ - owner of the firm KLN Pośrednictwo Kredytowe with its registered office in Kluczbork to the aforementioned bank unreliable documents in the name of I██ B█████ concerning circumstances material for obtaining of the credit by her in the form of:

> ➤ application of August 14, 1998 for granting to I██ B█████ of credit in the amount of 10,000 zlotys for purchase under an installment system of service in the form of a 2 - weeks' vacation in Turkey from Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg,

> ➤ simplified bill of number 119/VIII/98 of August 14, 1998 issued by Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg, documenting fictitious purchase by I██ B█████ of a 2- weeks' vacation in Turkey for four persons worth 10,362.80 zlotys,

> ➤ credit contract of August 17, 1998 concluded by Bank Zachodni Spółka Akcyjna Branch in Namysłów with borrower I██ B█████ for purchase under an installment system of service in the form of a 2 - weeks' vacation in Turkey in the amount of 10,000 zlotys,

which documents contained untrue information concerning allocation of the credit, since the credited service actually did not take place.

that is an offense under article 3 paragraph 1 of the Act of October 12, 1994 on protection of business and amendment of certain regulations of the criminal law in connection with article 265 paragraph 1 of the Act of April 19, 1969 Criminal Code with application of article 10 paragraph 2 of the Act of April 19, 1969 Criminal Code and article 58 paragraph 1 of the Act of April 19, 1969 Criminal Code in connection with article 4 paragraph 1 of the Act of April 19, 1969 Criminal Code.

II. In the period from October 13 through 16, 2009 at the Consulate General of the Republic of Poland in Sao Paulo, acting in short time intervals, in execution of a prior intention, for the purpose of obtaining for himself a provisional passport, he deceitfully misled the vice-consul of the aforementioned diplomatic post T███ Ł██ in this way, that:

-   on October 13, 2009 he submitted an application for issue of a passport document, in which he provided untrue personal data of the applicant, and in the place of signature of the applicant and in the place of passport holder he forged the signature of J█████ A███ A██████████ signing for that person, and

-   he presented as his identity document a damaged passport of series AM and number ████████361 issued by the Opole Voivode in the name of his brother J██ A███ A███████████, following which,

-   having been warned of criminal liability provided for in art. 233 paragraph 1 of the Criminal Code and other he submitted a false written statement of circumstances of destruction of this passport document, on which he forged the signature of his brother J███ A███ A██████████, and subsequently

-   on October 16, 2009 in the place of signature of the person collecting the passport he forged the signature of J███ A███ A██████████, signing for him

as a result of which he obtained under false pretenses a provisional passport of series PA and number ██████012 in the name of J███ A███ A██████████ with his likeness, which certified untruth as to the identity of the passport holder, that is an offense under article 272 of the Criminal Code in connection with article 233 paragraph 6 in connection with paragraph 1 of the Criminal Code and article 270 paragraph 1 of the Criminal Code with application of article 11 paragraph 2 of the Criminal Code in connection with article 12 of the Criminal Code.

III.   On October 20, 2009 at the Consular Department of the Embassy of the Republic of Poland in London he attempted to obtain certification of untruth in the form of a 10-year passport in the name of his brother J███ A███ A██████████, by submitting an application for issue of the aforementioned passport document, in which he provided untrue personal data of the applicant, and on which, in the pace of signature of the applicant, as well as in the place of signature of the passport holder, he forged the signature of his brother J███ A███ A██████████, and further he presented to a consulate employee the obtained under false pretenses at the Consulate General of the Republic of Poland in Sao Paulo provisional passport of series PA and number ██████012 issued in the name of his brother J███ A███ A██████████, as a document certifying his identity, and further, following prior advice of criminal liability provided for in art. 233 paragraph 1 of the Criminal Code he submitted a false written statement of circumstances of destruction of the passport of series AM and number ████████361 issued by the Opole Voivode in the name of his brother J██ A███ A██████████, on which in the place of signature of the persons submitting explanations he forged the signature of J███ A███ A██████████, attempting in this way to deceitfully mislead a consular official of this diplomatic post. authorized to issue the document, but failed to achieve the intended objective in view of verification actions undertaken by the said official,

that is an offense under article 13 paragraph 1 of the Criminal Code in connection with article 272 of the Criminal Code in connection with article 273 of the Criminal Code and article 233 paragraph 6 in connection with paragraph 1 of the Criminal Code and article 270 paragraph 1 of the Criminal Code with application of article 11 paragraph 2 of the Criminal Code.

The following materials indicate perpetration of the alleged acts by the suspect:

Number 1 - Information of Bank Zachodni Spółka Akcyjna Branch in Namysłów of March 22, 1999, indicating collaboration of the firm KLN K█████ N██████ with Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg in the matter of credit agency along with credit documentation. This piece of evidence allows for establishment of a circle of individuals who concluded through the agency of Firma Handlowo - Usługowa Biuro Podróży PTTK with its registered office in Brzeg, operated by H███ and Adam Antonowicz, the contested in the course of the investigation credit contracts for purchase of tours, the amount of the granted credits and their status. It also enables assessment of reliability of the information submitted by the parties of the contested contracts mentioned in the charges pressed against Adam, material with regard to granting of credits in specific amount, as well of the documents used by the above-mentioned for the purpose of proving their earning capacity. The secured credit contracts also contain appropriate information containing the terms and conditions for granting the said cash credits, as well as the amount of the due commission.

Number 2 - record of interview of K█ N███████ as a suspect of May 10, 1999. Explanations of K█████████ N█████, operator of a business under the name KLN Pośrednictwo Kredytowe with its registered office in Kluczbork confirm the fact of collaboration with Adam Antonowicz in the scope of credit agency for purchase of goods under an installment system financed by Bank Zachodni Spółka Akcyjna Branch in Namysłów. K███████ N██████ also maintains that he was not aware that a number of documents submitted to him by Adam Antonowicz, including mainly bills of purchase by borrowers of tour services, were falsified.

Number 3 - explanations of suspect K█████ N███████ of March 14, 2000, from which it follows that prior to commencement of collaboration with Adam Antonowicz he personally coached him in the then valid at Bank Zachodni Spółka Akcyjna procedures for sale of products under an installment system, in particular the need for verification of reliability and completeness of documents submitted by borrowers.

Number 4 - schedule of credits transmitted for vindication by Bank Zachodni Spółka Akcyjna Branch in Namysłów, constituting an attachment to the record of interview as a witness of Mirosław Lewandowski - employee of Bank Zachodni Spółka Akcyjna Branch in Namysłów of May 4, 2000. This documents comprises a list of persons who, through the agency of K█████ N████████ and Adam Antonowicz, incurred from Bank Zachodni Spółka Akcyjna Branch in Namysłów credits for purchase under an installment system, along with information about the current amount of debt of these persons as of April 30, 2000.

Number 5 - certified copies of credit documentation in the name of M███ K███████. From these documents it follows that Adam Antonowicz acted as an agent in conclusion by M█ K██████ on August 13, 1998 of a credit contract for the amount of 10,000 zlotys for purchase under an installment sale system of a two-weeks' vacation in Malta for two persons. For he signed a number of documents submitted by M███ K████, including the credit application and the credit contract of August 13, 1998 as a person authorized to accept the application and determine authenticity of the borrower's signatures. He also issued on behalf of Biuro Podróży PTTK in Brzeg i and personally signed a simplified bill of number 115/VIII/98 of August 11, 1998, documenting fictitious purchase by M███ K██████ of a 2-weeks' vacation in Malta for the amount of 10,890.46 zlotys.

Number 6 - record of interview as a suspect of M████ K███████ of July 30, 2003. From the explanations of M████ K███████ it follows that he actually did incur from Bank Zachodni Spółka Akcyjna Branch in Namysłów a credit for the amount of 10 000 zlotys, but not for purchase of a foreign tour but on request of his neighbor J████ M███████, whom he gave the entire ultimately obtained amount of 7,400 zlotys. M████ K███████ also confirmed the fact of signing of all credit documents presented to him, which on behalf of Firma Handlowo - Usługowa Biuro Podróży PTTK Branch in Brzeg were signed by a stranger named Adam Antonowicz. For M████ K███████ never appeared at Firma Handlowo - Usługowa Biuro Podróży PTTK Branch in Brzeg for the purpose of discharging the required formalities. Transfer of documents needed for conclusion of the credit contract and subsequently issue of money from the granted credit were effected by a middleman A████ D████, who was involved in the criminal scheme along with Adam Antonowicz. From the statement of M████ K███████ it follows also that on the date of the interview he had not paid any installment of the incurred credit, because J████ M███████ had undertaken to repay the credit, who could not be interviewed in view of her death.

Number 7 - record of interview as a witness of Wiesława Cebula of October 22, 1999. From the testimonies of this witness it follows that she contacted her brother M████ K███████ with A████ D████, who offered to help him in obtaining of cash credit in the amount of 10 000 zlotys. From the account of this witness it follows that M████ K███████ had given A████ D████ the documents required to obtain the credit, and subsequently through his agency signed a credit contract. However, from the amount of 10 000 zlotys he had applied for he received only 7,400 zlotys. When M████ K███████ requested clarification of this situation, it turned out that A████ D████ deducted for himself the amount of 200 zlotys for gas, whereas the balance of the commission was collected by his colleague, who actually acted as agent in obtaining of the credit. As has been established, the mentioned individual was Adam Antonowicz, who for the purpose of obtaining credit for M████ K███████ issued a fictitious bill, from which followed that the credit was allocated for financing of an excursion to Cyprus.

Number 8 - certified copies of credit documentation in the name of J████ K███████. From these documents it follows that Adam Antonowicz acted as an agent in conclusion by J████ K███████ on August 04, 1998 of a credit contract for the amount of 10,000 zlotys for purchase under an installment sale system of a two-weeks' vacation in Majorca for four persons. For he signed a number of documents submitted by J████ K███████, including the credit application and the credit contract of August 04, 1998 as a person authorized to accept the application and determine authenticity of the borrower's signatures. He also issued on behalf of Firma Handlowo - Usługowa Biuro Podróży PTTK Branch in Brzeg a simplified bill of number 101/VII/98 of July 31, 1998 documenting fictitious purchase by J████ K███████ of a 2-weeks' vacation in Majorca for four persons for the amount of 11,1776.36 zlotys. In turn, from a statement of the borrower on submission to execution of August 4, 1998 it follows that Adam Antonowicz accepted from J████ K███████ a statement that she received on account of the concluded credit contract under an installment sale system the amount of 10,000 zlotys.

Number 9 - record of interview as a witness of J████ K███████ of April 26, 1999. From the testimonies of this witness it follows that in late July 1998 she purchased from Firma Handlowo - Usługowa Biuro Podróży PTTK Branch in Brzeg vacations in Majorca for four persons. All formalities connected with the said credit on behalf of the tour operator were arranged by her acquaintance of long standing, Adam Antonowicz. Since in August 1998 the cohabitee of J████ K███████ suffered a traffic accident, she was forced to give up the vacation. She then obtained from Adam Antonowicz the amount of 9,000 zlotys on account of



alleged reclassification of the credit incurred for purchase of a tour event into a cash loan. As has been established, she did not at the time possess a valid passport and in spite of obtaining funds by the date of the interview she had repaid only one installment of the granted credit, being in delay with repayment of the balance.

Number 10 - certified copies of credit documentation in the name of P███ M████████. From these documents it follows that Adam Antonowicz acted as an agent in conclusion by P███ M████ on August 04, 1998 of a credit contract for the amount of 2,000 zlotys for purchase under an installment sale system of a two-weeks' vacation in Spain. For he signed a number of documents submitted by P███ M████████, including the credit application and the credit contract of August 04, 1998 as a person authorized to accept the application and determine authenticity of the borrower's signatures. He also issued on behalf of Firma Handlowo - Usługowa Biuro Podróży PTTK Branch in Brzeg a simplified bill of number 98/VII/98 of July 28, 1998 documenting fictitious purchase by P███ M████████ of a 2-weeks' vacation in Spain for the amount of 2,500 zlotys.

Number 11 - record of interview as a witness of P███ M████████ of February 25, 1999. From the testimonies of this witness it follows that his colleague Adam Antonowicz offered him assistance in obtaining a cash loan without unnecessary formalities. According to assurances of Adam Antonowicz, a condition for obtaining credit under an installment sale system was fictitious purchase from his Firma Handlowo - Usługowa Biuro Podróży PTTK Branch in Brzeg of a tour service. When P███ M████ consented to this scheme, Adam Antonowicz prepared and filled all the required documents, issuing further on July 28, 1998 a certifying untruth simplified bill of number 98/VII/98, from which it follows that the credit incurred by Paweł Marszałek was allocated for purchase of vacation for two in Spain of total value of 2,500 zlotys. From the account given by P███ M████████ it follows in turn that he had obtained from Adam Antonowicz within the framework of of the granted credit the amount of 1,500 or 1,600 zlotys, being fully aware of the breach of procedures required for obtaining of credit. On the date of the interview P███ M████████ had not repaid any installment of the incurred credit, explaining that he did not know the amount of the credit installment established by the bank and was not in receipt of a schedule of payments.

Number 12 - record of interview as a suspect of P███ M████████ of June 09, 2003. From the explanations of P███ M████ it unequivocally follows that being in urgent need of money, on instigation of Adam Antonowicz and on the pretense of purchase from Firma Handlowo - Usługowa Biuro Podróży PTTK Branch in Brzeg of a vacation is Spain under an installment system, he incurred from Bank Zachodni Spółka Akcyjna Branch in Namysłów credit in the amount of 2,000 zlotys. For this purpose he signed all documents transmitted to him by the suspect, along with the dated July 28, 1998 simplified bill of number 98/VII/98, issued by Firma Handlowo - Usługowa Biuro Podróży PTTK Branch in Brzeg and documenting fictitious purchase of a two-weeks' vacation in Spain worth 2,500 zlotys. Of the credit amount granted by the bank, however, Adam Antonowicz handed him only 1,500 zlotys, stating that the balance constituted costs and commission on account of arranging a fast cash loan. In view of difficult financial situation, P███ M████████ as of the date of interview had not repaid the incurred credit.

Number 13 - original credit documentation in the name of A███ R████████. From these documents it follows that Adam Antonowicz acted as an agent in conclusion by A███ R████████ on August 17, 1998 of a credit contract for the amount of 10,000 zlotys for purchase under an installment sale system of a two-weeks' vacation in Turkey. For he signed a number of documents submitted by A███ R████████, including the credit application and the credit contract of August 17, 1998 as a person authorized to accept the application and